IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| NAKESHA NAKOLE DONALDSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:13cv616-MHT |
| | ) | (WO) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Nakesha Nakole Donaldson ("Donaldson") is before the court on a *pro se* motion to

vacate, set aside, or correct sentence under 28 U.S.C. § 2255.

## I.  INTRODUCTION

Guilty Plea and Sentencing

On September 20, 2012, Donaldson pled guilty under a plea agreement to one count

of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371; one count

of wire fraud, in violation of 18 U.S.C. § 1343; and one count of aggravated identity theft, in

violation of 18 U.S.C. § 1028A.  The plea agreement contained a waiver of Donaldson's

right to appeal or collaterally challenge her conviction and sentence except on grounds of

ineffective assistance of counsel and prosecutorial misconduct.  Gov. Ex. 2 (Doc. No. 4) at

7-8.[1]  Following a sentencing hearing on January 2, 2013, the district court sentenced

---

[1] Unless otherwise indicated, references to document numbers ("Doc. No.") are to those
assigned by the Clerk of Court in the instant civil action.  Page references are to those assigned by
(continued...)

Donaldson to 57 months in prison, comprising concurrent 33-month terms for the conspiracy and wire-fraud counts and a consecutive 24-month term for aggravated identity theft. Donaldson took no direct appeal.

§ 2255 Motion

On August 26, 2013, Donaldson filed a motion for relief under 28 U.S.C. § 2255, asserting the following claims:

1. She was "over-sentenced."

2. She received a two-level guidelines sentence enhancement to which her trial counsel should have objected.

3. She should have received a three-level reduction in her offense level for acceptance of responsibility.

4. The sentences for her counts of conviction "should have run concurrently."

Doc. No. 1 at 4-7.

Amended § 2255 Motion

On October 3, 2013, Donaldson moved to amend her § 2255 motion to withdraw her claims that she improperly received a two-level sentence enhancement (and, concomitantly, that her counsel should have objected to the enhancement) and that her sentences should have

---

[1](...continued)
CM/ECF.  References to exhibits ("Gov. Ex.") are to those filed by the Government with its response and supplemental response (Doc. Nos. 4 & 13).

2

run concurrently.[2]  Doc. No. 7 at 1.  However, Donaldson added new claims for relief

asserting that her trial counsel rendered ineffective assistance of counsel by:

> (1)   failing to investigate or challenge the amount of tax loss attributed to her in determining her base offense level under U.S.S.G. § 2T1.9;
>
> (2)   advising her to "sign a plea with an erroneous calculated sentence"; and
>
> (3)   failing to challenge the version of the Guidelines Manual used to calculate her offense level.

Doc. No. 7 at 1-10.

The Government argues that all of Donaldson's claims are meritless and that,

therefore, she is not entitled to collateral relief.[3]  Doc. Nos. 4 & 13.  Based on the court's

consideration of the parties' submissions, the record, and the applicable law, the court

concludes that an evidentiary hearing is not required and that, pursuant to Rule 8(a), *Rules*

*Governing Section 2255 Proceedings in the United States District Courts*, Donaldson's §

---

[2] In withdrawing these claims, Donaldson conceded that her two-level enhancement under U.S.S.G. § 2T1.4(b)(1) was proper because she was in the business of preparing or assisting in preparing tax returns.  Doc. No. 7 at 1; *see* U.S.S.G. § 2T1.4(b)(1).  She conceded that her consecutive 24-month sentence for aggravated identity theft was proper because the statute mandated that the sentence for that offense run consecutively to any other sentence imposed.  *Id.*; *see* 18 U.S.C. 1028A(b).

[3] The Government also argues that Donaldson's substantive claims (i.e., the claims *not* based on the alleged ineffective assistance of counsel) are barred from review under the provision in her plea agreement under which she waived her right to appeal or collaterally challenge her conviction and sentence except on grounds of ineffective assistance of counsel and prosecutorial misconduct. Because Donaldson has withdrawn some of her substantive claims and because her remaining substantive claims plainly lack merit, this court pretermits discussion of the preclusive effect of the waiver provision in Donaldson's plea agreement.

2255 motion should be denied.

## II.   DISCUSSION

### A.   General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments under 28 U.S.C. § 2255 are limited.   A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.   *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999).   "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"   *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

### B.   Substantive Claims

Donaldson did not expressly withdraw two of her substantive claims: (1) that she was "over-sentenced," and (2) that she should have received a three-level reduction in her offense level for acceptance of responsibility.   *See* Doc. No. 1 at 4-5.   However, she sets forth no facts or argument in support of her substantive "over-sentencing claim," and she does little better regarding her claim that she should have received a three-level reduction for

4

acceptance of responsibility.  As a stand-alone issue, her over-sentencing claim is entirely unsupported and thus does not afford her a basis for collateral relief.[4]  As for her claim that she should have received a three-level reduction in her offense level based on her acceptance of responsibility, the record reflects that she *did* receive a three-level reduction (under U.S.S.G. § 3E1.1(a) & (b)) for her timely acceptance of responsibility, just as was provided in her plea agreement.  *See* Gov. Ex. 2 at 4; *also* Case No. 2:12cr57-MHT, Doc. No. 309 (sentencing hearing) at 3, 6, 13, 22.  Consequently, Donaldson establishes no basis for collateral relief on this claim.

### C.   Claims of Ineffective Assistance of Counsel

#### 1.   *Strickland Standard*

A claim of ineffective assistance of counsel must be evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 689.  Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler*, 218 F.3d at

---

[4] The court, however, does consider Donaldson's allegations that she was "over-sentenced" in the context of her specific claims of ineffective assistance of counsel, discussed in this Recommendation, *infra*.

5

1314 (internal quotation marks omitted).  The court will "avoid second-guessing counsel's performance:  It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted).  "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." *Id*.

As noted, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" *Strickland*, 466 U.S. at 694.  A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.  The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.  *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687.  Once a court decides that one

of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

### 2.   *Counsel's Failure to Challenge Attributed Tax Loss*

Donaldson claims that her trial counsel was ineffective for failing to investigate or challenge the tax loss attributed to her in determining her base offense level under U.S.S.G. § 2T1.9.  Doc. No. 7 at 1-7.

The guideline for 18 U.S.C. § 371 offenses is U.S.S.G. § 2T1.9, entitled "Conspiracy to Impede, Impair, Obstruct, or Defeat Tax."  *See* U.S.S.G. § 2T1.9 cmt. Statutory Provision (noting that the guideline applies to 18 U.S.C. § 371).  This guideline provides that the base offense level for § 371 offenses is the greater of the offense level from U.S.S.G. § 2T1.1 or § 2T1.4, as appropriate, or 10.  *Id*. § 2T1.9(a).  Both § 2T1.1 and § 2T1.4 indicate that the base offense level is determined by the amount of "tax loss," which is defined as "the total amount of loss that was the object of the offense (*i.e*., the loss that would have resulted had the offense been successfully completed)."  *Id*. § 2T1.1(c)(1).  After assigning the amount of tax loss, a sentencing court then refers to the Tax Table in U.S.S.G. § 2T4.1 to find the base offense level.

Here, consistent with the Presentence Investigation Report ("PSI") and the "Government's Provisions" section of the written plea agreement, the district court found that the attributable tax loss for Donaldson's conspiracy was between $1,000,000 and $2,500,000, which resulted in a base offense level of 22 under the Tax Table in § 2T4.1.  *See*

7

PSI at 8, ¶ 23; Gov. Ex. 2 (Doc. No. 4) at 4; § U.S.S.G. 2T4.1(I), (J).  In reaching the figure that was accepted by the court, the Government identified approximately 575 clearly false tax returns filed for the 2007 tax year by Donaldson and her coconspirators.  PSI at 6-7, ¶¶ 13-17.  The Government added the values of all false returns, looking at the loss that would have resulted had the offense been successfully completed.  *Id*. at 7, ¶ 20.  For the relevant period, approximately 250 false returns involving "HSH" income (household income) were filed, claiming a total of $1,080,073 in refunds.  *Id*.  Approximately 61 false Schedule C returns without W-2s were filed, claiming a total of $175,991 in refunds.  *Id*.  Approximately 146 false Schedule C income returns with W-2s were filed, claiming a total of $356,061.60 in refunds.  *Id*.  And approximately 118 false Schedule C loss returns with W-2s were filed, claiming a total of $199,413 in refunds.  These amounts were added to determine a total tax loss of $1,811,538.60.  *Id*.  This amount, according to the § 2T4.1 Tax Table, resulted in a base offense level of 22.  *See* § U.S.S.G. 2T4.1(I), (J).

Donaldson maintains that the tax loss attributed to her was overestimated.  Doc. No. 7 at 1-7.  She bases this assertion almost entirely on what she calls "new evidence" of a civil lawsuit that the Government filed against her in July 2013.  *Id*. at 4.  According to Donaldson, in the complaint filed in that lawsuit, the Government alleged that the tax loss from her offense was $431,095, an amount far less than the amount (between $1,000,000 and $2,500,000) attributed to her in the plea agreement and at sentencing in determining her base offense level.  *Id*.  She argues that if her trial counsel had conducted an adequate

investigation, he would have discovered that the tax loss from her offense was limited to the $431,095 amount alleged in the Government's July 2013 complaint and not the "between $1,000,000 and $2,500,000" amount attributed to her in the plea agreement and at sentencing. *Id*. She maintains that if counsel had challenged the loss tax attributed to her, it would have resulted in a lower base offense level – presumably 20 rather than 22[5] – and a lower sentence. *Id*. at 4-7.

Donaldson's argument here stems from her misunderstanding of the significance of the loss amount alleged in the Government's July 2013 complaint versus the facts underlying the tax loss attributed to her in determining her base offense level for sentencing purposes. After Donaldson was convicted, the Government filed the civil lawsuit seeking to enjoin her under 26 U.S.C. § 7407 from preparing tax returns in the future.[6] *See* Gov. Ex. 1 (Doc. No. 13). In the July 2013 complaint, the Government alleged that Donaldson had personally prepared over 100 fraudulent tax returns *for the 2008, 2009, and 2010 tax years*, which resulted in a total of $431,095 in lost revenue to the United States based on false claims and deductions. *Id*. at 2-3, 8. Thus, the $431,095 amount alleged in the civil lawsuit (an amount

---

[5] Under the Tax Table in § 2T4.1, tax loss between $400,000 and $1,000,000 results in a base offense level of 20. § U.S.S.G. 2T4.1(H), (I).

[6] *See United States v. Donaldson*, 2:13cv508-MEF. Title 26 U.S.C. § 7407, provides for injunctive relief against a "tax return preparer" (1) who engages in conduct subject to penalty under 26 U.S.C. § 6694 or (2) who engages in other fraudulent conduct that substantially interferes with the administration of the internal revenue laws. 26 U.S.C. § 7407(b)(1)(A), (D). In March 2014, the Government obtained a judgment permanently enjoining Donaldson from preparing further tax returns. *See* 2:13cv508-MEF, Doc. No. 15.

to which Donaldson asserts that the tax loss attributed to her at sentencing should have been limited) was accrued during three tax years (2008, 2009, and 2010) not considered in determining the tax loss attributed to her at sentencing, which, as noted above, was based on the approximately 575 false tax returns that she *and her coconspirators* filed for *the 2007 tax year*. In other words, the loss amount referred to in Government's July 13 complaint was unrelated (other than the fact that all losses stemmed from Donaldson's fraudulent conduct) to the tax loss attributed to Donaldson in determining her base offense level for her 18 U.S.C. § 371 conspiracy conviction.

For these reasons, the court finds that Donaldson fails to demonstrate that her counsel rendered ineffective assistance. Additional investigation by her counsel would *not* have revealed that the tax loss from the conspiracy to which Donaldson pled guilty was limited to $431,095, because the $431,095 amount stemmed from conduct by Donaldson that occurred after the conduct by her and her coconspirators alleged in the count of the indictment charging her with violating 18 U.S.C. § 371.[7] Donaldson completely fails to show any error

---

[7] In documents filed by Donaldson in July and August 2014, which were treated collectively by this court as a motion to supplement the § 2255 motion with matters in support of the claims presented therein (Doc. No. 20), Donaldson presents a new, additional argument about the supposed deficiencies in her trial counsel's investigation of the tax loss attributed to her, an argument not predicated entirely on her argument regarding the lower loss amount alleged by the Government in its 2013 civil lawsuit. Specifically, she takes issue with her counsel's reliance on the summary loss calculation provided by the Government and says this amounted to an inadequate investigation. *See, e.g.*, Doc. No. 20 at 2-3, 5-6. However, while acknowledging that he relied on the Government's summary loss calculations, Donaldson's trial counsel noted that the Government represented to him that the calculations in the summaries were "on the conservative side" and that, "During my review of these summaries, I did find that they were, if anything, indeed conservative in their estimates, and (continued...)

in the calculation of the tax loss attributed to her (between $1,000,000 and $2,500,000) in the plea agreement and at sentencing in determining her base offense level.  Therefore, she demonstrates no basis upon which her trial counsel should have challenged the tax loss attributed to her.  Failing to show either deficient performance by counsel or resulting prejudice, Donaldson is not entitled to any relief based on this claim of ineffective assistance of counsel.

### 3.    *Counsel's Advice to Sign Plea with Erroneous Calculated Sentence*

Donaldson also claims that her trial counsel rendered ineffective assistance by advising her to "sign a plea with an erroneous calculated sentence."  Doc. No. 7 at 1-2.  This claim, however, it little more than a corollary of the previously discussed claim by Donaldson that the tax loss attributed to her in the plea agreement and at sentencing was overestimated.  That claim was found to be wholly without merit.  Because the tax loss attributed to Donaldson in the plea agreement was correct, her counsel did not advise her to sign "a plea with an erroneous calculated sentence."  Because she fails to show deficient performance by counsel and any resulting prejudice, she is not entitled to relief based on this claim of ineffective assistance of counsel.

---

[7](...continued)
showed a tax loss to the U.S. Government as a result of the Premier Tax conspiracy to be well above $1 million, which is what appears in Ms. Donaldson's plea agreement."  Doc. No. 12 at 2. Donaldson does not show that counsel's investigation in this regard was professionally unreasonable. Further, she does not demonstrate prejudice, as she fails to show that the Government's summary loss calculations were incorrect.

### 4.    *Counsel's Failure to Challenge Guidelines Manual Used at Sentencing*

Finally, Donaldson contends that her trial counsel rendered ineffective assistance by failing to challenge the version of the Guidelines Manual used to calculate her offense level. Doc. No. 7 at 7-10.  She argues that if the district court had used the Guidelines Manual in effect on the date her offense was committed, instead of the Guidelines Manual in effect on the date she was sentenced, her base offense level, as determined by the Tax Table in U.S.S.G. § 2T4.1, would have been lower for the amount of tax loss that was attributed to her. *Id*.

As a general rule, "[t]he court shall use the Guidelines Manual in effect on the date that the defendant is sentenced." U.S.S.G. § 1B1.11(a).  However, "[i]f the court determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the *ex post facto* clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed." U.S.S.G. § 1B1.11(b)(1).  *See, e.g., United States v. Stark*, 262 F. App'x 930, 933 (11th Cir. 2008).  The Ex Post Facto Clause, U.S. Const. Art. I, § 9, cl. 10, protects people from, among other things, being subjected to a punishment more severe than that prescribed when the crime was committed.  *See United States v. De La Mata*, 266 F.3d 1275, 1286 (11th Cir. 2001).

Donaldson was sentenced on January 2, 2013.  The 2012 version of the Guidelines Manual (effective November 1, 2012) was used to calculate her offense level.  *See* PSI at 8,

¶ 22.  The tax loss attributed to her was "between $1,000,000 and $2,500,000," which resulted in a base offense level of 22 under the Tax Table in § 2T4.1 in the 2012 version of the Guidelines.  *See* § U.S.S.G. 2T4.1(I), (J) (2012).

The criminal activity to which Donaldson pled guilty began about December 2007 and ran through February 2008.  *See* Gov. Ex. 2 (Doc. No. 4) at 10-11.  Thus, the Guidelines Manual in effect on the date her offense was committed was the 2007 version (effective November 1, 2007).  Under the Tax Table in § 2T4.1 in the 2007 version of the Guidelines, attributed tax loss between $1,000,000 and $2,500,000 results in a base offense level of 22 – the same base offense level for this amount as provided under the 2012 version of the Guidelines.  *See* § U.S.S.G. 2T4.1(I), (J) (2007).

Consequently use of the 2012 version of the Guidelines Manual to calculate Donaldson's offense level (i.e., the version in effect when she was sentenced) did not result in an offense level that was higher than would have resulted had the 2007 version of the Guidelines Manual (i.e., the version in effect when her offense was committed) been used to calculate her offense level.  Thus, the 2012 version of the Guidelines Manual was properly used in Donaldson's case.  *See* U.S.S.G. § 1B1.11(a).  Her trial counsel was not ineffective for failing to challenge the version of the Guidelines Manual used to calculate her offense level, and she is not entitled to any relief on this claim.

For the reasons stated above, the court finds that Donaldson is not entitled to any

relief.[8]

## III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Donaldson be DENIED with prejudice.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **July 20, 2015**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive, or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual

---

[8] In a document filed by Donaldson in February 2015 that was treated by this court as a motion to supplement the § 2255 motion with matters in support of the claims, Donaldson seems to argue – for the first time – that her trial counsel was ineffective for failing to advise her that her 24-month sentence for aggravated identity theft would run consecutively to any other sentence imposed against her. Doc. No. 22 at 1-2. Assuming this claim were to be deemed an attempt by Donaldson to amend her § 2255 motion, it does not entitle her to any relief. First, the written plea agreement – which was signed by Donaldson, who attested she understood all the terms of her plea agreement – plainly states that her conviction for aggravated identity theft requires a mandatory 24-month sentence to run consecutively with any other sentence imposed. Gov. Ex. 2 (Doc. No. 4) at 2, 17. Moreover, the claim would be time-barred under 28 U.S.C. § 2255(f), because it was first raised well over a year after Donaldson's conviction became final (January 21, 2013) and it does not relate back to any § 2255 claim that was timely presented by Donaldson. *See* Fed. R. Civ. P. 15(c).

findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); s*ee Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 6th day of July, 2015.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE